## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **N.D., T.D., and S.D.**

**No. 24-713** (Berkeley County CC-02-2023-JA-165, CC-02-2023-JA-166, and CC-02-2023-JA-167)

## MEMORANDUM DECISION

Petitioner Father C.D.[1] appeals the Circuit Court of Berkeley County's November 4, 2024, order denying him post-termination visitation with the children, arguing that the circuit court improperly ignored his evidence in support of visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Given that the petitioner challenges only the denial of his motion for post-termination visitation, it is unnecessary to detail the entire procedural history of the proceedings below. Briefly, the DHS filed a petition in September 2023, alleging that the children had been exposed to domestic violence in the home and that both parents were using drugs.[3] At the adjudicatory hearing in October 2023, the petitioner admitted that he physically abused the mother in the presence of the children and abused drugs to the extent that it negatively impacted his ability to parent the children. Therefore, the circuit court found that the petitioner had abused and neglected the children. Shortly thereafter, the court granted the petitioner a post-adjudicatory improvement period, although his supervised visitation with the children was suspended based on concerns with his conduct during that time. Subsequently, the court ordered that visitation with the two younger children could recommence, but only if the visits were supervised and video recorded.

---

[1] The petitioner appears by counsel James P. Riley. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Susan J. MacDonald appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two children share the same initials, we use numbers to differentiate them.

[3] The DHS later filed an amended petition to include additional children, L.D.-1 and L.D.-2. On appeal, the petitioner is clear that he sought post-termination visitation with N.D., T.D., and S.D. only. Accordingly, the petitioner does not challenge any ruling in regard to L.D.-1 and L.D.-2, and those children are not at issue in this appeal.

The circuit court held a dispositional hearing over several days between July and October 2024. First, a child psychologist testified that he had completed a bonding evaluation and that the children did not have a bond with the petitioner. Next, the mother testified to the petitioner's physical, mental, and verbal abuse. She stated that the petitioner made multiple threats to kill her, degraded her, and threw things at her. After an incident involving a drug deal and robbery in the home, the mother testified that the petitioner yelled and shoved her which caused her to have a seizure and lose consciousness. The children were present during this incident. A previous childcare provider testified that T.D. and S.D. attended her daycare during the summer of 2023 for approximately four months and that the petitioner seemed to be a responsible parent. Later, however, the petitioner testified that the daycare provider only watched the two younger children for a total of ten days. Next, a CPS worker testified and opined that the petitioner was unable to take accountability for his actions, specifically his abuse of the children and the mother. Finally, the petitioner testified that he had changed his life and would not continue to abuse women or his children. However, he continued to avoid accountability by stating that he was only adjudicated for smoking marijuana and the children having a diaper rash. Further, when asked about one of his program completion letters that stated that he "still ha[d] a way to go in gaining a full understanding of what would be considered abusive behavior," the petitioner denied that it referred to him, claiming that it was about another program participant with the same first name. The petitioner also testified that his therapist told him he no longer needed therapy.

At the conclusion of disposition, the circuit court found that the petitioner's testimony was inconsistent and untruthful. The court found that the petitioner's actions showed a lack of self-control and that he had not demonstrated any change during the pendency of the case. Further, the court also found that the petitioner's witnesses, including the children's daycare worker, lacked knowledge of the facts of the case, and could not testify to any change in the petitioner's behavior. Citing to the petitioner's dishonesty throughout the case, the court found that the petitioner had not substantially complied with the improvement period. Ultimately, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that it was necessary for the children's welfare to terminate the petitioner's parental rights. Therefore, the court terminated the petitioner's parental rights to all of the children at issue, including N.D., T.D., and S.D.[4]

In October 2024, the circuit court heard the petitioner's motion for post-termination visitation. The petitioner testified that he had a strong bond with the children, especially N.D. The court also considered the previous testimony of the child psychologist who testified that the petitioner did not have a bond with the children. The court denied the petitioner's motion for post-termination visitation, finding that the children no longer had a bond with the petitioner and that post-termination visitation with the petitioner would not be in the children's best interests. It is from the order denying post-termination visitation that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in denying his motion for post-termination visitation. In determining whether

---

[4] The mother's parental rights were also terminated. The permanency plan is adoption in the current foster placement.

post-termination visitation is appropriate, a circuit court should consider, among other things "whether a close emotional bond has been established between the parent and child." *See* Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (quoting Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)). Ultimately, however, "[t]he evidence must indicate that such visitation . . . would not be detrimental to the child's well being and would be in the child's best interest." *Id.*[5] Here, the circuit court heard contradictory evidence concerning the children's bond with the petitioner. The psychologist testified that the bonding evaluation showed no bond between the petitioner and the children, contradicting the testimony of the petitioner and the daycare provider. The petitioner argues that the court should have given more weight to his testimony and the testimony of the daycare worker than the psychologist's testimony.[6] However, the court found that the daycare worker did not have sufficient knowledge of this case and that the petitioner's testimony lacked credibility. Under our standard of review, we refuse to reweigh evidence or decide the credibility of witnesses. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."); *see also In re D.S.*, 251 W. Va. 466, 914 S.E.2d 701, 707 (2025) (This Court will review a circuit court's decision under the applicable standards and will "not reweigh the evidence or make credibility determinations"). Here, the circuit court found that the children no longer had a bond with the petitioner and that post-termination visitation would not be in the children's best interests. Therefore, we decline to disturb the circuit court's findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2025

---

[5] We apply the standards in place at the time of the entry of the circuit court's order denying post-termination visitation but note that after its entry this Court provisionally amended Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and "adopt[ed] appropriate standards for consideration of post-termination visitation outside of a fact-based context." *In re Z.D.-1*, 251, W. Va. 743, -- n.21, 916 S.E.2d 375, 382 n.21 (2025).

[6] In support of this assignment of error, the petitioner also argues that the child psychologist completed a bonding assessment only with the two younger children and not with the oldest. However, the petitioner does not cite to any portion of the record on appeal to support this assertion. *See* W. Va. R. App. P. 10(c)(7) (requiring the petitioner's brief to include "citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal"). Instead, the circuit court's order denying post-termination visitation includes findings that the psychologist's testimony was applicable to all the children.

**CONCURRED IN BY**:

Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**NOT PARTICIPATING:**

Chief Justice William R. Wooton