**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* S.W.

**No. 25-108** (Webster County CC-51-2022-JA-48)

## MEMORANDUM DECISION

Petitioner Father J.W.[1] appeals the Circuit Court of Webster County's January 22, 2025, order terminating his parental rights to S.W., arguing that the court erred in terminating his parental rights and denying him post-termination visitation with the child.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in November 2022 alleging that the mother tested positive for methamphetamine upon giving birth to S.W.[3] Additionally, the DHS alleged that the petitioner admitted to using Subutex without a prescription, that he had used methamphetamine within the previous two weeks, and that he was homeless. The court held an adjudicatory hearing in January 2023 and found that the petitioner was a neglecting parent based on his inability to care for the child and his failure to provide a fit and suitable home for the child. However, the court found that there was insufficient evidence to find that the petitioner was addicted to controlled substances. At a hearing in September 2023, the court granted the petitioner a six-month post-adjudicatory improvement period, the terms of which included participating in random drug screens, participating in adult life skills and parenting classes, obtaining appropriate housing, and maintaining gainful employment. At a later hearing, the petitioner was granted a ninety-day extension of his improvement period.[4]

---

[1] The petitioner appears by counsel Andrew B. Chattin. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather Olcott. Counsel Mackenzie Anne Holdren appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The original petition included another child, J.C., who is not at issue in this appeal.

[4] During this hearing, the court found that the DHS failed to make reasonable efforts to achieve permanency. It appears from the record that the court made this finding because the DHS had not begun parenting or adult life skills services for the petitioner at that time, although those services were offered shortly thereafter.

1

The circuit court held the dispositional hearing in September 2024. A Child Protective Services ("CPS") worker testified that the petitioner sporadically visited the child until April 2024 when the petitioner stopped attending visitations, participating in drug screens, and communicating with the DHS. Further, the CPS worker testified that the petitioner had not maintained employment. The CPS worker testified that he received one text message from the petitioner on April 29, 2024, stating that he was "done with all this stuff" and that he did not have time to visit with his child in Webster County twice per week. Additionally, in July 2024, the petitioner was incarcerated for violating his parole and remained incarcerated at the time of disposition. The DHS then recommended termination of the petitioner's parental rights because of his total failure to comply with the terms of his improvement period. The petitioner conceded that the last time he attended visitation with S.W. was in April 2024 when he attempted to change the location of the visits to be at his home, but when unsuccessful, he completely stopped attending visitation. The petitioner also admitted that he relapsed and failed a drug screen. Further, he testified that a warrant was issued for his arrest in June 2024 for violating his parole, but he was not arrested until July. When asked about his whereabouts between June and July 2024, the petitioner stated he was "running around" Nicholas County and living with friends. The petitioner opined that he would be able to go back to work at his previous employment and would have stable housing when he was released. Lastly, the petitioner requested visitation with S.W.

The circuit court found that the petitioner failed to comply with the terms of his improvement period by not participating in the services provided to him or visiting with S.W. The court found that the issues that led to the filing of the petition had been present throughout the entire case and that there was no reasonable likelihood that those conditions of abuse and neglect could be corrected in the near future. Additionally, the court found that the petitioner's conduct was contrary to the welfare of S.W. and that there was no less restrictive alternative than termination of the petitioner's parental rights. Accordingly, the court terminated the petitioner's parental rights to S.W. The court also denied the petitioner's request for post-termination visitation, finding that he had not developed a meaningful relationship with the child, he had minimal visitation with her, and visitation with the petitioner would be contrary to the best interests of S.W. It is from the dispositional order that the petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating his parental rights based on its finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[.]" The petitioner argues that he substantially complied with the terms of his improvement period because, before his incarceration, he had gainful employment, a home, and participated in

---

[5] The mother retained her parental rights, and S.W. was returned to her custody.

some services. We disagree. Here, there is sufficient evidence to support the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future, as demonstrated by the petitioner's failure to comply with the terms of his improvement period, participate in visitation with the child, and communicate with the DHS. Further, the petitioner admitted at disposition that he wholly failed to participate in the case from April 2024 until the final hearing. As we have explained, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Additionally, the court found that termination of the petitioner's parental rights was in the child's best interests. Courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (allowing a court to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and[] when necessary for the welfare of the child"). As such, we decline to disturb the circuit court's decision.

The petitioner also argues that the circuit court erred in denying his request for post-termination visitation. In determining whether post-termination visitation is appropriate, a circuit court should consider, among other things, "whether a close emotional bond has been established between parent and child." *See* Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (quoting Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)). Ultimately, however, "[t]he evidence must indicate that such visitation . . . would not be detrimental to the child's well being and would be in the child's best interest." *Id.*[6] Here, the court heard evidence that the petitioner was incarcerated for a large portion of S.W.'s life and had minimal visitation with her. Further, the court found that post-termination visitation would be contrary to the best interests of S.W. As such, we discern no error in the circuit court's denial of the petitioner's request for post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

---

[6] We apply the standards in place at the time of the entry of the circuit court's order denying post-termination visitation but note that, after its entry, this Court provisionally amended Rule 15(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to more clearly articulate and adopt appropriate standards for consideration of post-termination visitation.