# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

September 21, 2015

**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

**In Re: C.S., M.S., & M.S.**

**No. 15-0299** (Kanawha County 14-JA-166, 14-JA-167, & 14-JA-168)

## MEMORANDUM DECISION

Petitioner Father R.S., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's February 26, 2015, order terminating his parental rights to C.S., M.S.-1, and M.S.-2. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights and in denying him post-termination visitation rights.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2014, the DHHR filed an abuse and neglect petition alleging that the children's six-week-old sibling, M.S.-3, died while in petitioner's care. According to the petition, on May 21, 2014, police were dispatched in response to a possible dead infant. Upon arriving at the scene, officers observed an infant in the back of a motor vehicle. Petitioner exited the vehicle and exclaimed that the baby was dead and he killed it. The child was pronounced dead at the scene. According to petitioner, he had earlier picked the child up and dropped him to the floor. Petitioner realized his son was dead within minutes, but did not call emergency personnel or notify anyone for approximately twenty-seven hours. During this period, one-year-old C.S. remained in petitioner's care. Petitioner then placed the infant's corpse in a separate bedroom and made plans to take his own life. Thereafter, petitioner used a knife to slit his throat in an attempt to kill himself, but passed out due to blood loss. According to petitioner, upon waking, he realized he had to contact the police.

---

[1]Because some of the children share the same initials, the Court will refer to them as M.S.-1, M.S.-2, and M.S.-3 throughout this memorandum decision. Further, we note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

By order entered on June 6, 2014, the circuit court found imminent danger to the children existed and placed them with the DHHR. Four days later, the circuit court held a preliminary hearing and petitioner waived his right to the same. Approximately six days later, the DHHR filed an amended petition with corrected information regarding M.S.-1's mother and the names and birthdates of the mother's other children, and including an additional father.

After continuing the adjudicatory hearing several times, the circuit court held that hearing on September 23, 2014. Petitioner appeared and testified that he was currently housed at Western Regional Jail for a charge of death by a parent. Petitioner further testified to the incident that caused the child's death, again stating that he dropped the child when picking him up and that he then shook the child. Petitioner further testified that instead of calling emergency services, he attempted to perform CPR on the child. However, medical testimony at the hearing established that the child's injuries were inconsistent with petitioner's account of the incident. Specifically, Dr. Jimmy Smith, First Deputy Chief from the Office of the Chief Medical Examiner, testified that, contrary to petitioner's assertion that the child was dropped once onto a flat surface, the autopsy indicated that the child had multiple impacts to multiple surfaces and other injuries as well. The hearing was then continued to December 5, 2014, during which petitioner's medical expert, Dr. Thomas Young, testified that petitioner's account was consistent with the autopsy. According to Dr. Young, he could not make a definitive determination as to whether the child suffered more than one blow. Dr. Smith provided rebuttal testimony, stating that the child's cause of death was head trauma sustained by multiple direct traumatic impacts to the head. Ultimately, the circuit court found that petitioner's failure to seek medical attention constituted abuse and neglect.

In January of 2015, the circuit court held a dispositional hearing, during which it found that M.S.-3 died of abusive head trauma inflicted by petitioner. Moreover, petitioner remained incarcerated throughout the proceedings on criminal charges related to the child's death and was unable to participate in any services offered. Further, the circuit court found that there were no services that could remedy the abuse that gave rise to the petition. The circuit court then terminated petitioner's parental rights and granted post-termination contact between petitioner and the children at the sole discretion of the children's non-abusing parents. However, the circuit court did not grant petitioner visitation rights. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

2

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights or in its denial of post-termination visitation. First, petitioner argues that because the children were all in the custody of their non-abusing mothers, a less restrictive dispositional alternative to termination of his parental rights existed. However, the Court does not agree. In support of this argument, petitioner cites to West Virginia Code § 49-6-5b governing when efforts to terminate parental rights are required. According to West Virginia Code § 49-6-5b(a)(3), "the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights" in a variety of situations, including those where the circuit court has determined that the parent has committed murder or voluntary manslaughter of his or her child. According to petitioner, the circuit court erred in terminating his parental rights because it never made a finding of murder or involuntary manslaughter. However, petitioner's argument misinterprets this statute as governing when a circuit court is allowed to terminate parental rights, instead of governing situations in which the DHHR is required to seek termination. Petitioner's argument further ignores other statutes that required the circuit court to terminate his parental rights.

Specifically, the circuit court was required to terminated petitioner's parental rights pursuant to West Virginia Code § 49-6-5(a)(6). At disposition, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse or neglect because he "demonstrated an inadequate capacity to solve the problems of child abuse or neglect on his own, or with help." This finding was based on the fact that petitioner could not participate in services designed to remedy the abuse in the home because of his incarceration, and that "there are no services available to correct the problems that gave rise to the filing of the petition." The circuit court also found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are required to terminate a parent's parental rights upon these findings.

Further, we have held that West Virginia Code § 49-6-5 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id.* As such, the Court finds no merit to petitioner's argument that the circuit court should have imposed the less restrictive dispositional alternative of a full guardianship for the non-abusing mothers so that petitioner could later petition for a modification of disposition. Because there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and termination was necessary for the children's welfare, the circuit court did not err in terminating petitioner's parental rights.

As to petitioner's assignment of error concerning post-termination visitation, we find no error. At disposition, the circuit court specifically ruled that it "provide[d] no right of visitation to [petitioner]," but did allow for the children's non-abusing mothers to use their discretion in allowing the children contact with petitioner in accordance with certain restrictions. The circuit court indicated that the contact must be in the child's best interest, must be supervised, cannot be initiated by petitioner, and cannot occur while petitioner is incarcerated. In making this decision, the circuit court was clearly guided by the children's best interests, which is in keeping with our prior direction as to post-termination visitation. We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002).

The record shows that the circuit court considered the appropriate factors in making its determination and ultimately ruled in accordance with the children's best interests. To the contrary, petitioner's argument in favor of continued contact entirely disregards the children's best interest. Specifically, petitioner argues that one of the children's mothers has been taking the child to counseling to deal with issues related to this case. Petitioner then argues that "[t]he court's order forecloses contact should the mother and therapist find it appropriate or necessary as part of therapy." According to petitioner, the children should be forced to maintain contact with him even if such contact is against the advice of a counselor specifically treating one of the children for issues arising from petitioner's conduct. As such, it is clear that the circuit court correctly ruled that granting petitioner post-termination visitation rights was not in the children's best interest, and we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court and its February 26, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: September 21, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4