# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: A.H.**

**No. 15-0504** (Kanawha County 14-JA-420)

**FILED**

October 20, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Mother Y.S., by counsel Paul K. Reese, appeals the Circuit Court of Kanawha County's April 30, 2015, order terminating her parental rights to A.H. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the child supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in finding she abused or neglected the child, denying her post-termination visitation, and that the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings were substantially disregarded or frustrated such that vacation of the dispositional order is warranted.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2014, the DHHR filed an abuse and neglect petition and alleged that petitioner, then seventeen-years-old, abused her child. The DHHR filed the petition after the circuit court overseeing a youth services case involving petitioner was made aware of several Child Protective Services ("CPS") referrals alleging that petitioner abused the child and directed that a petition be filed. Specifically, on one occasion, a witness from Florence Crittenton, the residential facility petitioner attended because of truancy, saw the child's mouth bleeding and blood on a bathroom floor. Petitioner was holding a towel in the child's mouth in an attempt to stop the bleeding. Shortly thereafter, a bruise appeared on the child's cheek near his mouth. The child was reported as saying "mommy bad" and "mommy did it." Petitioner alleged the child hit his head in the bathtub. However, the witness indicated that petitioner is very short-tempered with the child and often yells at him, and that staff did not believe her version of the event.

---

[1] We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

During the preliminary hearing in January of 2015, the circuit court took judicial notice of the fact that petitioner was placed at Florence Crittenton under a truancy order for treatment, which included parenting services. However, petitioner was released from that facility in December of 2014 because she completed the necessary requirements for graduating from high school. A worker from that facility also testified about an incident where petitioner became frustrated with the child, grabbed him from a table, shoved him against a wall, and then bent his arms backward to the point the child began crying. The staff member instructed petitioner to let the child go, but she responded that she would discipline him as she saw fit. Another worker testified that petitioner frequently grabbed the child by the arm, yelled at him, and failed to provide proper supervision. At the conclusion of the hearing, the circuit court ordered both petitioner and the child be placed at Florence Crittenton with additional parenting services.

In February of 2015, the circuit court held an adjudicatory hearing, during which CPS advised that petitioner had not gone back to Florence Crittenton as ordered. Petitioner told CPS that she was taking online college classes, had two jobs, and that going back to the facility would "set her back." Because petitioner did not return to the facility, the DHHR set up supervised visitation and adult life skills and parenting education. Petitioner testified that she did not return to the residential facility because she thought it was a suggestion, rather than an order. When asked if she would avail herself of another opportunity to return to the facility, petitioner responded that she would not. As such, the circuit court adjudicated petitioner as an abusing parent.

In April of 2015, the circuit court held a dispositional hearing, during which a service provider testified that petitioner only visited the child four times of the approximately eleven visitation opportunities available. The circuit court then stated that it would give petitioner one more chance to enter the residential facility, but petitioner declined the offer. The circuit court then terminated her parental rights. In terminating petitioner's parental rights, the circuit court found that she did not appear for some services and failed to actively or consistently participate in others. The circuit court also found that she failed to benefit from services, having resisted instructions and learning. The circuit court also found that petitioner failed to consider her child's needs and did not make them a priority. Petitioner appeals from the dispositional order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court adjudicating petitioner as an abusing parent or in denying her post-termination visitation. Further, we decline to find that any alleged frustration or disregard of the applicable rules warrants vacation of the dispositional order.

First, there is simply no merit to petitioner's argument that the circuit court lacked sufficient evidence upon which to adjudicate her as an abusing parent. West Virginia Code § 49-1-3(1)(A) states that "'[a]bused child' means a child whose health or welfare is harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts [or] attempts to inflict . . . physical injury or mental or emotional injury, upon the child or another child in the home[.]" In the instant matter, the circuit court was presented with testimony from workers from Florence Crittenton who witnessed petitioner's actions and a CPS worker who investigated the abuse. The evidence established that the child stated "mommy did it" and "mommy bad" after petitioner was discovered in the bathroom with the child bleeding profusely from the mouth. The evidence also established that petitioner became frustrated with the child, pulled him from his chair, shoved him against a wall face-first, and pulled his arms behind his back to the point he cried. When confronted by an employee, petitioner indicated that she would parent the child as she saw fit and became hostile with the employee. The circuit court heard evidence of other incidents wherein petitioner yelled and screamed at the child, and also provided inappropriate supervision. In fact, one witness testified that because petitioner could not properly care for the child, the facility provided her one-on-one supervision for the child's safety. Further, petitioner admitted that she had anger issues and physically disciplined the child out of anger.

In addressing the burden of proof at adjudication in abuse and neglect matters, we have held that

> "W.Va.Code, 49-6-2(c), requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). Upon our review of the record, it is clear that the DHHR satisfied the requisite burden of proof in this matter. Petitioner's argument on this issue is premised almost entirely on the fact that, prior to the abuse and neglect petition's filing, CPS investigated these incidents and did not substantiate abuse. While it may be true that CPS and the DHHR are more adept at investigating allegations of abuse and neglect in accordance with applicable protocols and policies, the fact that the DHHR did not choose to file an abuse and neglect petition following this investigation is not proof that no abuse occurred. As set forth above, the evidence clearly established that petitioner physically abused the child, failed to supervise him properly, and failed to provide

appropriate care, all while placed in a supervised and controlled environment. As such, we find no error in this regard.

Next, the Court finds no error in regard to the applicable Rules of Procedure for Child Abuse and Neglect Proceedings. On appeal, petitioner argues that the circuit court erred in failing to ensure that the DHHR complied with its order for a psychological evaluation; ordering and obtaining a drug screen, but then allowing the results to be misplaced; and imposing residential treatment. In arguing for relief for these alleged errors, petitioner relies upon the following holding:

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). Upon our review, however, we find no error in this regard that would require vacation of the dispositional order.

First, the circuit court did not err in ordering that petitioner report back to Florence Crittenton at the outset of the proceedings. As noted above, there were legitimate concerns about petitioner's ability to provide the child with care even in this facility such that she was required to have direct supervision while in that facility. Pursuant to West Virginia Code 49-6-3(a)(1) and (2), when a petition is filed

> the court may order that the child alleged to be an abused or neglected child be delivered . . . into the custody of the [DHHR] . . . if it finds that . . . [t]here exists imminent danger to the physical well being of the child; and . . . [t]here are no reasonably available alternatives to removal of the child . . . .

Because the circuit court had evidence that the child was in imminent danger in petitioner's care, it sought to allow petitioner to remain with the child in the residential treatment facility. However, petitioner refused to re-enter the facility. Throughout the case, the circuit court repeatedly allowed petitioner the choice to re-enter the facility in an effort to provide her with services to remedy the abuse and neglect, but she continued to put her own needs above those of her child, thereby evidencing her inability to correct the conditions of abuse and neglect. Because it is clear petitioner could not parent the child on her own, the circuit court did not err in requiring petitioner to re-enter this program in order to obtain the services necessary to properly parent her child.

As to the other issues petitioner raises in regard to this assignment of error, the Court finds that the DHHR's failure to obtain a psychological evaluation or secure the results of petitioner's drug screen are inconsequential in light of petitioner's refusal to follow through with services in this matter. Testimony from service providers established that petitioner did not

cooperate or participate in the services offered and that she put her needs before the child's. This includes the fact that petitioner attended only four of the approximately eleven opportunities to visit the child. Testimony further established that during the visits she did attend, petitioner did not exhibit a strong bond with the child and spent her time interacting with adults that were present. The Court additionally notes that a recent psychological assessment from Florence Crittenton was provided in discovery below, and that petitioner's parental rights were not terminated upon any findings of substance abuse. For these reasons, the Court finds that none of the alleged errors herein amount to a substantial disregard or frustration of the applicable rules such that vacation of the dispositional order is warranted.

Finally, the Court finds no error in the circuit court denying petitioner post-termination visitation.[2] We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner provides no evidence that continued contact or visitation would be in the child's best interest, other than her assertion that she and the child share a close bond. However, as noted above, the circuit court was presented with evidence that petitioner and the child were not closely bonded, and the record is devoid of any evidence that continued contact would be in the child's best interests. As such, we find no error in the circuit court denying petitioner post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court and its April 30, 2015, order is hereby affirmed.

Affirmed.

---

[2]The circuit court did permit petitioner visitation with the child at the sole discretion of the child's non-abusing father. However, the circuit court was clear that it "provides no right of visitation to [petitioner]."

**ISSUED**: October 20, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II