# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **I.P., C.P., & K.S.,**

**No. 14-1299** (Barbour County 14-JA-2, 14-JA-3, &14-JA-4)

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother P.C., by counsel Justina D. Helmick, and Petitioner Step-Father B.C., by counsel Chaelyn W. Casteel, appeal the Circuit Court of Barbour County's September 12, 2014, order terminating P.C.'s parental rights to, and B.C.'s custodial rights to, I.P., C.P., and K.S. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel William P. Jones, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Karen Hill Johnson, filed a response on behalf of the children. On appeal, petitioners allege that the circuit court erred in denying their motions for an improvement period, and for post-termination visitation, and in terminating petitioner mother's parental rights without considering less-restrictive dispositional alternatives.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2014, the DHHR filed an abuse and neglect petition against petitioners. The petition alleged that the step-father whipped his stepson, I.P., with a belt on more than one occasion. Child Protective Services ("CPS") observed significant bruising on I.P.'s upper left thigh, two bruises on his left shin, and a line that resembled a belt mark. I.P. disclosed to CPS that he was afraid of going home and begged the CPS worker not to call his brother or his mother because he was afraid he would get into trouble. The mother admitted to CPS that the step-father whipped I.P. and that she told him that he should not have smacked I.P. because she knew the child would report it to the school and to CPS. The petition further alleged that during another interview, petitioners gave a different explanation for I.P.s bruises than in the original interview and that the mother became agitated and screamed at a CPS worker when she was asked to sign a temporary protection plan for I.P. In January of 2014, the circuit court held an adjudicatory hearing. At the hearing, the mother admitted that she smoked marijuana. The circuit court

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

ordered that she submit to drug testing at the conclusion of the hearing. Petitioners were also ordered to call the drug testing line and participate in random drug screenings. Also, at the request of the children's guardian, the circuit court scheduled an in-camera hearing.

In February of 2014, the circuit court held the in-camera hearing. The children testified that the step-father hit I.P. with a belt; that petitioners let their dogs attack the children; that the step-father physically abused them in front of the mother but she did not intervene; and that the mother hit the children with a closed fist. The children also testified that they had been hit in the head and throat, and that they were grabbed and pinched. At the close of the hearing, the circuit court concluded that it had concerns regarding the children's matter-of-fact testimony as to the strained relationship between petitioners and regarding the physical violence in the home. The circuit court also noted its concerns about the mother allowing the step-father to discipline her children, and petitioners' drug use in the home.

At a March of 2014 review hearing, the guardian requested that the petition be amended to reflect the evidence and testimony given at the previous hearings. The DHHR agreed to amend the petition. The circuit court found that petitioners lied to the court about their drug use and again ordered them to call the drug testing line and to submit to random drug screens. In March of 2014, the DHHR filed an amended petition to include petitioners admitted drug use.

In April of 2014, the circuit court held a second adjudicatory hearing where petitioners testified. The mother testified that she never physically disciplined the children before she married the step-father and that she believed the step-father's methods of discipline were inappropriate, but that she would not divorce the step-father. The step-father testified that he hit the children and admitted that he hit I.P. with a belt, but he did not believe that the hit left any marks. The step-father also testified that his drug use did not affect his ability to parent. The mother testified that she did not call the random drug testing hotline, as the circuit court ordered, because she has "trouble remembering things." Likewise, the step-father testified that he did not call the hotline because he "works four tens." At the conclusion of their testimony, the guardian advised the circuit court that the substance of petitioners' testimony was that they did not admit the extent of the physical abuse of the children; that they blamed the children for the abuse; and they did not accept responsibility for the abuse. The circuit court found that petitioners did make admissions to some physical abuse of the children. The circuit court also found that petitioners were abusing parents and that I.P., C.P., and K.S. were abused children. The circuit court held petitioners' motion for an improvement period in abeyance.

In June of 2014, the circuit court held a review hearing. The guardian reported that petitioners were ordered to submit to random drug testing, but that the last date for any drug testing for either petitioner was in March of 2014.

In September of 2014, the circuit court held a dispositional hearing. It reminded petitioners that they were ordered in April of 2014 to submit to random drug testing. Both petitioners admitted they did not submit to random drug testing. The circuit court noted that it considered petitioners' motion for an improvement period, but found that petitioners had failed to comply with the circuit court's order to submit to random drug testing for the past three months. Accordingly, the circuit court denied petitioners' motion for an improvement period.

The circuit court ruled that petitioners minimized the abuse in their home. Based upon the evidence presented, the circuit court found that the provision of services could not rectify the circumstances of abuse and neglect given that petitioners' refusal to accept or admit to any abuse. By order dated November 19, 2014, the circuit court terminated the mother's parental rights and the custodial rights of the step-father. It is from this order that petitioners now appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's denial of petitioners' motion for improvement periods, and post-termination visitation, or in its termination of petitioner mother's parental rights without considering less-restrictive dispositional alternatives.

First, the court finds no merit to petitioners' argument that the circuit court erred in terminating the mother's parental rights and the step-father's custodial without considering less-restrictive alternatives. Here, the record is clear that petitioners failed to comply with several circuit court orders during these proceedings and that they minimized the abuse in their home.

Pursuant to West Virginia Code § 49-6-5(b)(3), there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Here, the circuit court was presented with sufficient evidence to make this finding with regard to petitioners based upon the record on appeal. Petitioners never acknowledged the degree of physical and emotional abuse of the children in their home; they minimalized the extent of the abuse; they minimized their drug use; and failed to follow the circuit court's order to submit to drug testing. The circuit court also found that termination of the mother's parental rights and the step-father's custodial rights was in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

Further, we have previously held that

3

"[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As such, it was not error for the circuit court to terminate the mother's parental rights and the step-father's custodial rights instead of imposing a less-restrictive dispositional alternative.

As to petitioners' argument that the circuit court erred in denying their motions for a post-adjudicatory improvement period, the Court finds no error. Pursuant to West Virginia Code § 49-6-12(b)(2), a circuit court may only grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." While petitioners argue that they satisfied this burden by both expressing a desire to remediate the findings of abuse and participate in services, we do not agree. As addressed above, the evidence established that petitioners failed to comply with specific directions from the circuit court during the proceedings. Petitioners minimized the abuse of the children, they minimized their drug use, and failed to follow the circuit court's order to submit to drug testing. Petitioners' argument on appeal ignores the numerous problems they exhibited during the proceedings below.

Finally, the Court finds no error in the circuit court's denial of petitioners' post-termination visitation. We have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioners provide no evidence that continued contact or visitation would be in the children's best interests, other than their assertion that they share a close bond with the children. To the contrary, the circuit court was presented with evidence that the children were adamant that they did not want to have further contact with the step-father. Further, the circuit court ordered the Multidisciplinary Team ("MDT") to meet and to make further recommendations as to any visitation between the mother and the children. The record is devoid of any evidence as to any

MDT recommendations that continued contact would be in the child's best interests. As such, we find no error in the circuit court's denial of petitioners' post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court and its September 12, 2014, order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II