STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**June 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: S.E., Jr.-1

**No. 16-0114** (Mineral County 14-JA-15)

## MEMORANDUM DECISION

Petitioner Father S.E.-2, by counsel Lauren M. Wilson, appeals the Circuit Court of Mineral County's December 18, 2015, order terminating his parental rights to S.E.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee S. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Meredith H. Haines, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights because he successfully completed his improvement period; it failed to consider less-restrictive dispositional alternatives; and termination was based on allegations not contained in the petitions. Petitioner further alleges that the circuit court erred in awarding him limited post-termination visitation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2014, the DHHR received a referral concerning petitioner and the child's mother. According to the referral, the home was unsanitary, domestic violence was ongoing, and S.E.-1, then one month old, was being physically abused and neglected. When a DHHR

---

[1]Because the child and petitioner share the same initials, we will refer to them as S.E.-1 and S.E.-2, respectively, throughout the memorandum decision. Additionally, consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

employee arrived to investigate the home, petitioner became belligerent with the employee and demanded she leave the home. Because of the employee's fear of petitioner, a new employee was assigned to petitioner's case. The DHHR attempted to maintain the child in the home while providing services, but petitioner refused to allow any DHHR employee in the home. As such, the DHHR filed an abuse and neglect petition against petitioner based on domestic violence in the child's presence. Petitioner was then ordered to leave the child in the mother's custody and vacate the home.

The circuit court held an adjudicatory hearing in December of 2014, after which it adjudicated petitioner as an abusing parent based upon repeated instances of domestic violence in the home. A few days later, the DHHR learned that the mother left the child in the care of petitioner's mother, whose appropriateness was questionable. Further, petitioner was living with his mother at the time. As such, the DHHR filed an amended petition and named the mother as an abusing parent. The child was placed in foster care, and the mother was later adjudicated as an abusing parent.

In February of 2015, both parents were granted post-adjudicatory improvement periods. Initially, they complied with the terms and conditions of the improvement period. However, following a psychological evaluation, it was determined that petitioner was in the "mild mental retardation" range of intellectual ability. As such, petitioner was unable to complete the batterer's intervention course required by his improvement period. The service provider modified the program to include individual counseling to assist petitioner in remedying the issues of domestic violence. However, the provider was still unable to note any progress by petitioner, despite nearly one year of services. Moreover, petitioner's parenting and adult life skills instructor noted that petitioner was unable to understand basic childhood development despite a year of those services and an exhaustion of the allotted resources to fund the same.

In June of 2015, petitioner and the mother began having relationship issues, including repeated verbal disagreements during visits. That month, petitioner reported that the mother left him for another man and moved out of the home. Also during June of 2015, the child had surgery, and the parents were permitted to be present for the procedure. While at the hospital, petitioner and the mother engaged in an argument that eventually resulted in their being escorted from the hospital by security officers.

In August of 2015, the circuit court granted petitioner an extension to his improvement period. The mother then stopped participating in services and moved out of the area. Petitioner continued to attempt to comply with services, but there were concerns about his inability to safely parent the child. Due to these concerns, the DHHR implemented parenting supervision in the home five days per week to assure the child's safety. During this period, there were several instances of petitioner's endangering the child, including the following: leaving the child unattended in a bathtub; feeding the child food he could not safely eat; and improperly supervising the child, resulting in the child's falling face-first to the floor from a table. The providers and DHHR employees followed up on these concerns, but petitioner provided little insight into how to correct the issues. Additionally, petitioner tested positive for oxycodone in October and December of 2015.

That same month, the circuit court held a dispositional hearing and terminated petitioner's parental rights. Because of the strong bond between petitioner and the child, the circuit court ordered that petitioner have post-termination visitation three times per year. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights because he completed all the terms and conditions of his improvement period and should have had the child returned to his care. The Court, however, does not agree. To the contrary, the record is clear that petitioner was unable to complete many aspects of his improvement period, including the requirement that he complete a batterer's intervention program to correct the conditions of abuse and neglect giving rise to the petition's filing. Although petitioner argues that he successfully completed his improvement period, he also plainly acknowledges that he did not complete the batterer's intervention program. While petitioner asserts that he was "excused" from this program, the record contradicts this assertion. Specifically, petitioner's service provider suspended the program because petitioner "lacked the insight that was required to complete" the same. Instead of proceeding with that program, petitioner's provider modified the program to fit petitioner's ability by providing individual counseling. However, despite a year of services, his provider ultimately testified that "he ha[d] not seen progress" in petitioner's ability to apply the techniques that he learned or his ability to understand those techniques. Petitioner's adult life skills provider further testified that petitioner failed to complete the goals of that service because of his inability to obtain independent housing. As such, it is clear that petitioner failed to successfully complete his improvement period.

While it is true that petitioner attempted to comply with services, he was ultimately unable to remedy the conditions of abuse and neglect present below. This Court has previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to

3

be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Simply put, petitioner ultimately failed to resolve the issues of abuse and neglect such that returning the child to his care would not be in the child's best interests. As such, we find no error in this regard.

Next, petitioner alleges that the circuit court erred in basing termination of his parental rights upon allegations not contained in the petition. Again, petitioner argues that he completed the requirements of his improvement period and corrected the conditions of abuse and neglect in the home. Additionally, he argues that the circuit court subsequently terminated his parental rights upon allegations that he lacked the mental capacity to properly parent his child and that this allegation was not included in the petitions. However, petitioner's argument fails to acknowledge the specific circumstances below. Contrary to his argument that he remedied the domestic violence in the home, petitioner admits that "[h]e was unable to complete the [batterer's intervention] program . . . ." While it is true that petitioner's lack of insight into his actions prevented him from successfully completing the program, the fact remains that his service provider specifically testified that he made no progress and that there were no more services that could be offered to remedy these issues. Petitioner's service providers further testified to concerns about the child's safety if returned to petitioner's care. As such, it is clear that petitioner's lack of intellectual capacity prevented him from remedying the issues of domestic violence in the home, and the circuit court properly terminated his parental rights upon those allegations from both petitions.

Further, the Court finds that petitioner's lack of intellectual capacity does not constitute a new allegation upon which his parental rights were terminated, but instead find that it constitutes an impediment to petitioner's ability to correct the original conditions of abuse and neglect in the home. We have previously held that

> "[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). While the DHHR did not specifically allege intellectual incapacity against petitioner in this matter, it nonetheless made efforts to determine if petitioner could care for the child with intensive, long-term assistance. On appeal, petitioner admits that the DHHR provided him with supervised visitation in the home several days per week "for up to eleven hours at a time . . . ." As such, it is clear the DHHR made all necessary efforts to determine if petitioner was able to properly care for the child.

Further, despite recognizing the extensive in-home services provided below, petitioner nonetheless asserts that he was denied other assistance that could have corrected the conditions

4

of abuse and neglect in the home. However, the Court notes that petitioner's assertion is based on the fact that the provider supervising his visitation in the home was instructed not to intervene to correct petitioner's parenting mistakes but was instructed to intervene only to prevent injury to the child. According to the record, the provider did, in fact, intervene several times, including one instance in which she prevented the child from burning himself on a heater that was not properly blocked from the child's reach. While petitioner argues that he should have received instruction from this supervisor, the record is clear that petitioner did receive instructive services from his parenting and adult life skills education. However, despite over a year of those services, his provider ultimately testified that petitioner did not complete the goals of those programs. As such, it is clear that while the DHHR did not allege intellectual incapacity against petitioner, it took reasonable steps to determine if petitioner could properly care for the child.

Next, petitioner alleges that the circuit court erred in terminating his parental rights without considering less-restrictive dispositional alternatives. The Court, however, does not agree, as the circuit court was required to terminate his parental rights upon the findings that there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect and that termination was in the child's best interests. Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Again, petitioner argues that he corrected the conditions of abuse and neglect by successfully completing his improvement period, but the record is clear that they persisted throughout the extended proceedings below. As noted above, petitioner's providers clearly testified that he made insufficient progress in the services designed to remedy the abuse and neglect. Contrary to petitioner's argument that the circuit court failed to consider less-restrictive dispositional alternatives, the Court finds that the circuit court was required to terminate his parental rights upon these findings pursuant to West Virginia Code § 49-4-604(a)(6). Moreover, we have previously held that "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . .' Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As noted above, the circuit court had serious concerns about petitioner's ability to properly parent the child. As such, we find no error in the circuit court terminating his parental rights.

Finally, petitioner argues that the circuit court erred in awarding him limited post-termination visitation with the child at his own expense. The Court, however, finds no error in this regard. We have previously held as follows:

5

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). According to petitioner, the three annual visits petitioner is allotted with the child are insufficient to foster the bond between them. However, the Court notes that petitioner has cited no authority that dictates how frequently such post-termination visitation should occur or whether the DHHR must pay for such visitation. Petitioner has failed to establish that the circuit court abused its discretion in awarding him post-termination visitation, and, as such, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 18, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: June 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II