# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: E.E.**

**No. 19-0106** (Wood County 17-JA-150W)

**FILED**

**October 17, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father E.E.-2, by counsel George M. Torres, appeals the December 28, 2018, order of the Circuit Court of Wood County, West Virginia, terminating his parental rights to his daughter, E.E.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed its response in support of the circuit court's order. The child's guardian ad litem, Robin S. Bonovitch, filed a response on behalf of the child also in support of the circuit court's order. On appeal, Petitioner argues the circuit court erred by terminating his parental rights solely due to his incarceration, without imposing a less-restrictive dispositional alternative, and denying post-termination visitation.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon review, the Court discerns no substantial question of law and no prejudicial error. Consequently, a memorandum decision affirming the order of the circuit court is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

In June of 2017, the DHHR filed an abuse and neglect petition against the parents of E.E.-1. According to the petition, the DHHR received a referral that Respondent Mother was "living down by the river and is homeless." Child Protective Service workers and law enforcement officers arrived at the homeless encampment and located Mother and the child. Mother admitted that she had been homeless for approximately two to three weeks. The child, who was three years old at the time (almost four), appeared "disheveled, dirty, smelled of urine, and unkempt." The child had bug bites on her body, a cigarette burn on her face, severely rotting teeth, and was hungry. Mother's face and arms were covered in sores and she admitted that she had been injecting methamphetamines.

In the petition, DHHR alleged that Mother could not provide for the child's basic needs like appropriate shelter, food, clothing, medical care, and supervision because of her drug use. With regard to Petitioner, DHHR alleged he "has seen the child a few times but has not been in

---

[1] Consistent with our long-standing practice in cases involving sensitive facts, we identify the parties by initials only. *See In re Jeffrey R.L.*, 190 W. Va. 24, 26 n.1, 435 S.E.2d 162, 164 n.1 (1993). Because Petitioner and the child share the same initials, we refer to Petitioner Father E.E.-2 as "Petitioner" and E.E.-1 as "the child."

the child's life consistently." Additionally, "there has not been a paternity test, his name is not on the birth certificate and he has not been ordered to pay child support."

In July of 2017, the circuit court held an adjudicatory hearing. Mother stipulated to the allegations contained in the petition. The circuit court accepted her admissions and adjudicated her an abusive and neglectful parent. Although the circuit court granted Mother the opportunity to participate in a post-adjudicatory improvement period, it ultimately terminated her parental rights.

In July of 2017, the circuit court ordered that Petitioner submit to paternity testing and the test results confirmed Petitioner was the child's biological father. Thereafter, the circuit court conducted status hearings in relation to Petitioner in May and July of 2018.

In September of 2018, the DHHR filed an amended petition. With regards to Petitioner, the DHHR alleged: Petitioner had not seen the child since June of 2017 and it was unclear when he had seen the child prior to then; during the proceedings, there had been times when Petitioner was incarcerated in Ohio and West Virginia; Petitioner was currently incarcerated at the North Central Regional Jail in Greenwood, West Virginia, and was being held on a breaking and entering and destruction of property charge; prior to his incarceration, Petitioner was homeless and did not have appropriate housing and shelter for the child; Petitioner was also recently indicted in Ohio for grand theft for allegedly stealing a handgun out of a vehicle.

In October of 2018, the circuit court held an adjudicatory hearing. Petitioner testified that he resided with Mother during her pregnancy.[2] Petitioner stated that after their child was born, he and Mother were in a relationship for two and a half years before breaking up. Petitioner claimed he had frequent visitation with the child for about a year after the relationship ended with Mother. Petitioner stated he had been incarcerated various times throughout these proceedings and was currently incarcerated. Petitioner admitted to having a pending fugitive charge from Ohio. He further admitted to not providing food, clothing, shelter, or supervision to the child since May of 2017. Petitioner claimed that he did not seek visitation with the child because Mother told him there was no need to get involved in the case as he was not on the birth certificate and she believed DHHR would eventually return the child to her.

The circuit court entered its adjudicatory order in November of 2018. It found that, based upon the conditions existing at the time of the petition's filing, the child was abused and neglected as defined by West Virginia Code § 49-6-2(c). The circuit court stated Petitioner failed to provide the child with necessary food, clothing, shelter, supervision, or medical care. Moreover, Petitioner had no contact with the child for more than six months and failed to support her financially, educationally, or emotionally. The circuit court noted that prior to Petitioner's

---

[2] Because Mother was married to another man, R.D., when the child was born, R.D. was the child's legal father on the birth certificate. After paternity tests revealed Petitioner was her father, the circuit court dismissed R.D. from this action and directed the DHHR to petition for amendment of the birth certificate.

most recent incarceration, he was homeless and did not have appropriate housing for the child.[3] From approximately May of 2017, to the day of the adjudicatory hearing, Petitioner had no contact with the child and made no request to visit her.

In December of 2018, the circuit court held a dispositional hearing during which Petitioner testified that his first incarceration after the initial petition was filed was October of 2017. Petitioner stated that he was currently incarcerated. Petitioner claimed he was involved in the child's life for the first three and a half years, and last saw the child in May of 2017. Petitioner stated he was staying with a friend in Marietta, Ohio, when DHHR took custody of the child and learned this happened about a week later when he spoke with Mother. Petitioner stated that he would like to have visitation with the child when he is released from jail but he could not predict when that would occur.

The circuit court terminated Petitioner's parental rights. In its dispositional order, the circuit court stated that had Petitioner come forward earlier, he could have potentially participated in services prior to his most recent incarceration. It held that Petitioner had not provided the child with necessary food, clothing, shelter, supervision or medical care and failed to support the child financially, educationally, or emotionally. The circuit court determined there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future. It is from this order that Petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating his parental rights based solely upon his incarceration and without imposing a less-restrictive dispositional alternative. We do

---

[3] Petitioner is a registered sex offender in the State of Ohio; prior to these proceedings, Petitioner registered various addresses for himself including his mother's address as well as being homeless.

not agree. In discussing the termination of an incarcerated parent's rights, we have held as follows:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3. Although the circuit court discussed Petitioner's incarceration in its dispositional order, it relied on other factors when terminating his parental rights. Namely, *prior* to Petitioner's incarceration, he failed to provide the child with basic needs such as food, clothing, shelter, or supervision. At the adjudicatory hearing, Petitioner admitted that, prior to May of 2017, he failed to provide the child with these basic needs. As such, the circuit court considered relevant factors—other than incarceration—that affected the child's well-being in reaching its determination.

Further, this same evidence supports the circuit court's termination of Petitioner's parental rights instead of a less-restrictive dispositional alternative. According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental and custodial rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the child's welfare. Here, the circuit court made the necessary findings, based upon substantial evidence, to support termination of Petitioner's parental rights.

According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has not responded to or following through with rehabilitative efforts. The circuit court specifically found that Petitioner could have made more of an effort at the onset of this case to avail himself of services and possible supervised visitation. We agree. Petitioner's excuse for not seeking visitation with the child because Mother supposedly told him he could not as he was not on her birth certificate rings hollow. Petitioner was named Respondent Father and appointed counsel at the onset of this proceeding. Petitioner admitted he was aware the child was in DHHR's custody within a week but still failed to respond or seek visitation. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood Petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare.

4

We have also held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c) ] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record is clear that the circuit court had ample evidence upon which to base its findings, we find no error in the termination of Petitioners' parental rights.

Finally, the Court finds no error in the circuit court's denial of post-termination visitation. In support of this assignment of error, Petitioner argues that his bond with the child during the first few years of her life necessitates post-termination visitation.[4] We disagree. This Court has held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

At the dispositional hearing, Petitioner offered no evidence whatsoever that post-termination visitation would be in the *child's* best interest. Likewise, he does not make this argument on appeal. This Court has repeatedly recognized that a child's welfare acts as "the polar star by which the discretion of the court will be guided." *In re Clifford K.*, 217 W. Va. 625, 634, 619 S.E.2d 138, 147 (2005) (internal citation omitted). Thus, we find no error in the circuit court denying post-termination visitation.

This Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

---

[4] Petitioner contends that the circuit court made the erroneous finding that a parent-child bond did not exist. However, the circuit court made no such finding in its dispositional order. Rather, it found that Petitioner "has not seen the above-named child in 18 months." This fact is undisputed.

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-46-4(b)(6) ], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, we note that the guardian ad litem's role in this proceeding will not cease until such time as the child is placed in a permanent home. Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the reasons set forth above, we affirm the December 28, 2018, order of the Circuit Court of Wood County.

Affirmed.

**ISSUED:** October 17, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison